STATE ex rel. SCHOOL DISTRICT No. 2 OF THE TOWN
AND · VILLAGE OF WEST BEND VS. WOLFROM,
Clerk, etc.

SCHOOL DISTRICTS: *May be organized in villages.— Incorporation of village, including part of territory of school district, creates joint district. Vote of school district tax "for incidental purposes."*

PRACTICE. *Suit against officer; successor in office made party; appeal by both. Costs against public officer.*

1. Under the constitution of this state, school districts may be organized, and public moneys raised, apportioned and distributed, in *villages* as well as in towns and cities.

2. Where a village is incorporated so as to include only a portion of an existing school district, leaving the residue in the town, and the act does not indicate an intention to destroy the organization of such district (ch. 135, Pr. and L. Laws of 1868), the effect is to create a *joint* district of the town and village; and it is the duty of the town clerk, upon the order of the school district board, to collect from the taxpayers of that part of the district lying within the town their portion of the school district tax.

3. A school district being authorized to assess a tax not exceeding $300 annually, to keep the school-house in repair, and furnish it with fuel and appendages, a tax of $50 voted "for incidental purposes" (in addition to one for teachers' wages and one for building school-house), is *held* good as an exercise of this power.

4. Where, on an application for *mandamus* against a public officer, the writ is allowed and judgment rendered against him for costs, and his successor in office is then made a party to the proceedings and judgment, and the peremptory writ granted against him, *both* may appeal from the judgment.

5. In proceedings by *mandamus* against a public officer, costs for the proper fees and charges of the officers of the court, and all necessary disbursements (but perhaps not attorney's fees), follow the judgment.

APPEAL from the Circuit Court for *Washington* County.

An act of the legislature, approved February 28, 1868, and published on the third of March following, and now appearing as chapter 135, Private and Local Laws of 1868, declares that the inhabitants of the district of

country described and bounded as follows : The south half of section eleven, the south-west quarter of section twelve, the west half of section thirteen, the east half of section fourteen, and the north-west quarter of section twenty-four, including the village plat of West Bend and the several additions thereto, all being in township eleven north, range nineteen east, in said county, are thereby created a body corporate and politic by the name of " The president and trustees of the village of West Bend," and by that name they are impowered to contract, to sue and be sued, purchase, hold and convey real and personal estate, have a common seal, and " have and exercise all the rights and privileges, and be subject to all the duties and obligations, pertaining to a municipal corporation." The act further provides for the election of a president, four trustees, clerk, assessor, treasurer, marshal and constables of such village, and defines the powers and duties of those officers. Section 13 provides that " the trustees shall appoint a clerk, who shall attend the meetings of said trustees, and keep a record of the proceedings, and also a faithful record of all their doings and the votes of the inhabitants at the regular and special meetings ; he shall perform such duties as are lawfully required of him by the trustees." Section 14 provides, among other things, that the village treasurer " shall have the same powers and make his returns to the county treasurer (sic), be subject to the same liabilities and laws, and receive the same compensation, as town treasurers." Section 29 provides, that " the clerk and treasurer provided for by this act shall, in all things pertaining to their office, be governed by the same laws as town clerks and town treasurers." Among the powers conferred upon the trustees are the following (sec. 15, subd. 16) : " To organize school districts in said village, to receive the money coming from the town or county for the benefit of the scholars of said village, and generally to have full control over all public

schools in said village, and to take such measures for the benefit of public instruction as they may deem proper." The only other reference in the act to schools or school districts is a provision (sec. 5) that "the first election for officers provided for in this act shall be held at the school-house in district number eleven, in said village of West Bend," etc. Section 30 provides that "on the day appointed for holding the annual town meeting for the several towns in this state next ensuing; all connection between the town of West Bend and the village of West Bend, for town purposes, shall be dissolved, and the duties now and hereafter imposed upon the supervisors and other officers of towns shall be imposed upon the officers of the village of West Bend. And so much of the town of West Bend as is not included in the limits of said village shall constitute the town of West Bend for the purpose of town and county government."

In November, 1868, a court commissioner of Washington county, on the application of "*School District No. 2 of the town and village of West Bend,*" granted an order upon the respondent, as town clerk of the town of West Bend (being the town in which said village was situate), to show cause to 'the circuit court (at its January term, 1869), why a *mandamus* should not issue against him to compel him to assess a certain tax upon the taxable property in said district within said town. This order was based upon an affidavit, which states that respondent was elected town clerk of said town at the annual meeting in 1868, and was still such clerk; that the village of West Bend had been duly incorporated under the above-mentioned act, and officers thereof had been duly elected; that prior to the passage of said act there was in the town of West Bend a school district known as "School District No. 2, of the town of West Bend;" that a part of said school district was within the corporate limits of said village, and the remainder

JANUARY TERM, 1870.        471

State ex rel. School District No. 2, West Bend, vs. Wolfrom, Clerk, etc.

in said town ; that the school-house of said district was within the corporate limits of the village ; that there was real property of said district, in said town, liable to taxation, amounting to $39,395 ; that a verified statement of the clerk of said district had been duly served upon said town clerk (set forth by copy), showing that "the amount of taxes voted to be raised in school district No. 2, of the *town and village* of West Bend, at the last annual meeting of said district, held on the 28th of September, 1868," was $1,600, and "the proportion of that amount to be raised in that part of said district which lies in the *town* of West Bend," was $330.20 ; requiring him to assess the same upon the taxable property therein ; and giving him "a list of the names of the persons and corporations liable to school district tax in that part of the district lying within the *town* of West Bend." The statement was signed "G. J. Wilmot, clerk of school district No. 2, of the town of West Bend and village of West Bend." The affidavit further states that the affiants composed the district board of said district ; that at the annual meeting of said district in 1868, taxes were voted as set forth in the above-mentioned statement, for the following purposes, to wit: for the payment of teacher's wages in the district, $650 ; for the payment of indebtedness of said district incurred for building school-house in 1866, $900 ; *for incidental purposes*, $50 ; that said school district contained a population exceeding 250 inhabitants ; that said Wilmot, being district clerk, as such, on the 10th of November, 1868, made out and delivered to said *Wolfrom*, as such town clerk, the verified statement above recited ; that he made out another verified statement as required in case of *joint* school districts (the contents of which are recited in the affidavit) ; that said town clerk refused to assess the sum mentioned in said statement delivered to him, upon the property liable thereto situated in the part of said district within said town. The

State ex rel. School District No. 2, West Bend, vs. Wolfrom, Clerk, etc.

tax mentioned in this affidavit is the one referred to in the above-mentioned order.

The respondent filed in the circuit court at the January term, 1869, an affidavit showing cause why the *mandamus* should not issue. It states that there is no such school district as "Joint School District No. 2 of the town and village of West Bend;" that the supervisors of said town, on the 12th of May, 1868, having duly convened for that purpose, made an order (of which a copy is set forth), which purported to attach certain parts of sections 23 and 24 in said town to "school district No. 3 of the town of West Bend;" that no notice of such order was ever given to the officers of school district No. 2 of said town, nor to any of them, and that affiant was not aware that the consent of said officers had ever been obtained to such order; and that on the 2d of June, 1868, said supervisors made an order directing that certain parts of sections 14, 15 and 23, in said town, be attached to "school district No. 4" in said town.*

The court, at the March term, 1869, awarded a peremptory writ as prayed for by the relator. It also rendered judgment against *Wolfrom* for the costs to be taxed in the suit, and they were subsequently taxed at $47.31. No appeal having been perfected, an order was made at the October term, 1869, making *Miller*, the successor of *Wolfrom* in office, a party to the proceedings and judgment, and granting the peremptory writ against him. Thereupon *Wolfrom* and *Miller* appealed.

*Foster & Coe*, for appellants:

1. If the town clerk, whoever he might be, was the defendant in the action, he could appeal. But the judg-

---

*The printed papers do not show, but it is doubtless the fact, that the parts of sections included in these two orders had previously been included in "school district No. 2," of said town, and constituted that part of said school district which lay outside of the *village* of West Bend.

ment is personal against *Wolfrom* as to costs.   2. The tax levied "for incidental purposes" was not authorized by law.   Laws of 1863, ch. 155, sec. 19, subd. 5.   3. Before the *village* of West Bend was created, the school district taxes in the town of West Bend were collected by the town treasurer and town clerk, they being made by law school district officers for that purpose.   Laws of 1863, ch. 155, sections 62, 63.   The erection of the village would not necessarily alter a school district that lay partly or wholly within its territory, nor interfere with the machinery by which it performed its functions.   If the village charter has not provided otherwise, the clerk of the *town* of West Bend is still, for the purpose of assessing taxes for the relator, a school district officer, and entitled to assess *all* the taxes voted at the annual meeting.   Will a *mandamus* be granted to compel him to insert *a part* only of the tax in the assessment roll?   4. The village charter does not transfer this duty to the village clerk as to that part of the district lying within the village.   Section 13 specifies the duties of the clerk, and section 29 merely regulates the manner of performing them.   5. The constitution of this state speaks of towns (art. 4, sec. 23, and art. 10, secs. 4 and 5), of cities (arts. 10, 11 and 13), and of villages (arts. 11 and 13), as distinct things, but has not defined them.   It provides for the distribution of school moneys through the machinery of towns and cities, but not through villages.   Art. 10, secs. 4 and 5.   This seems to assume that there can be no territory where there is no town or city, any more than there can be territory where there is no county ; as if towns and cities were the ultimate political divisions covering the whole state.*   A village seems to be a municipal

---

* Constitution, art. 10, sec. 4.   "Each town and city shall be required to raise, by tax, annually, for the support of common schools therein, a sum not less than one-half the amount received by such town or city respectively for school purposes, from the income of the school fund."   Sec. 5.   "Provision shall be made by law for the distribution of the income of the school fund among the several towns and cities of the state, for the support of common schools therein, in some just proportion to the

corporation within a town, but not interfering with it. R. S. 1849, ch. 52. 6. Counsel further contended that there were no provisions in the village charter which it was necessary to construe as intended to interfere in any way with the operation of the general law in regard to the collection and distribution of school moneys through town and city officers. 7. Is not the whole charter in violation of the constitution? Has not the legislature attempted to create a peculiar sort of town, and by giving it another name tried to evade the constitution? Can the name be abolished unless a city be created? If this corporation is not a town, it is outside the provisions of sections 4 and 5 of art. 10. See also sec. 23, art. 4, prescribing uniformity of town and county government. 8. There is no law giving costs in the circuit court on an application for a *mandamus.* Sec. 4, ch. 159, R. S. relates to the supreme court. Costs are only by statute. 2 Til. & Sh. Pr. 580.

*Frisby & Weil,* for relator, contended that the writ was properly issued against *Miller* (R. S. ch. 18, sec. 27, last clause; Wisconsin School Code of 1867, sec. 63; 22 Wis. 210; 15 id. 37, and cases there cited), and that *Wolfrom* no longer had any interest which would permit him to appeal. The notice of appeal is, that the "defendant and his successor in office appeal," etc. They cannot *join* in an appeal; and the notice is not good as to *Miller.* So the undertaking recites that "the defendant" has appealed. For these reasons the appeal should be dismissed. 2. Upon the creation of the village, the relator became a joint district of the town and village. School Code of 1867, sections 6 and 7; *Town of Cassville v. Morris,* 14 Wis. 440; R. S. ch. 5, sec. 1, subd. 20; sec. 1, last clause, sec. 14, last clause, and secs. 16 and 30 of the charter, ch. 125, Pr. & L. Laws of 1868.

---

number of children and youth resident therein, between the ages of four and twenty years; and no appropriation shall be made from the school fund to any city or town for the year in which said city or town shall fail to raise such tax, nor to any school district for the year in which a school shall not be maintained at least three months."

DIXON, C. J.   The appeal in this case is well taken. The original defendant, *Wolfrom*, had the right to appeal, with respect to the judgment against him for costs ; and his successor in office, *Miller*, could join in the appeal, with respect to the subsequent order making him a party to the proceedings and judgment, and granting the peremptory writ against him.

There is no force in the constitutional objections urged by counsel for the defendants, that school districts can be organized, and public moneys raised, apportioned and distributed, only in towns and cities, and not in villages. The clauses referred to in the constitution were intended to have no such restrictive operation.

And we think it very clear, from the several provisions of the village charter to which reference has been made by counsel, that it was not the intention of the legislature to interfere with or destroy the organization of this school district, and, consequently, that on the creation of the village and separation of its territory from that of the town, so as to include within its limits a part only of the school district, leaving the residue in the town, the effect was to create a joint school district of the town and village by operation of law, which district was thenceforth to be managed and governed according to the provisions of law applicable to other school districts similarly situated.   Such being the effect of the act incorporating the village and defining its powers and boundaries, it follows that the officers of the town and village had jurisdiction, respectively, over the affairs of the district according to the claim put forth by the relator, and that the court below was right in granting the peremptory writ of *mandamus*, unless there was error in the proceedings of the district meeting in voting to raise the sum of fifty dollars "for incidental purposes."

It is objected that the tax for this sum is invalid, because the purposes for which it was to be raised were

not distinctly specified.    The inhabitants of a school district, when lawfully assembled at the annual meeting, are authorized to vote such tax as they shall deem sufficient to keep in repair and furnish the school-house with necesssary fuel and appendages.    There are some limitations upon this power, but, in any case, the amount voted may be equal to three hundred dollars in any one year.    Laws of 1863, ch. 155, § 19, subd. 5.    It might be more precise, in voting a tax for these purposes, to say "for repairs, fuel and appendages ;" but the words "for incidental purposes" must, we think, be construed to mean the same thing.    They are apt and proper words to designate expenditures of that kind; and when they are so understood, there was no irregularity or want of certainty in voting the tax.

The acts of the supervisors of the town attempting to detach certain lands from the district are conceded to have been unauthorized and void.

Nor was there any error in giving judgment against the defendant *Wolfrom* for costs.    Costs for the proper fees and charges of officers and all necessary disbursements follow judgment, as a matter of course, in proceedings of this nature.    They are taxable under the general provisions of statute, though, perhaps, not attorney's fees allowed to parties in civil actions.    It does not appear in this case that any attorney's fees were taxed, but only the proper fees and charges of officers and witnesses.

*By the Court.*— Judgment affirmed.